**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED JULY 27, 2012

STATE OF MICHIGAN

SUPREME COURT

CEDRONI ASSOCIATES, INC,

      Plaintiff-Appellee,

v                                                        No. 142339

TOMBLINSON, HARBURN
ASSOCIATES, ARCHITECTS &
PLANNERS, INC,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

The issue here is whether plaintiff, the disappointed lowest bidder on a public contract, had a valid business expectancy for the purpose of sustaining a claim of tortious interference with a business expectancy. The trial court held that plaintiff did not have such an expectancy, but a divided Court of Appeals panel held that a genuine issue of material fact exists in this regard. Because we agree with the trial court and the Court of Appeals dissent that plaintiff did not have a valid business expectancy, we reverse the

judgment of the Court of Appeals and reinstate the trial court's order granting defendant's motion for summary disposition.

## I. FACTS AND HISTORY

Davison Community Schools, a public school district, entered into a contract with defendant for architectural services with regard to a construction project. As part of the contract, defendant agreed to assist the school district with the bid selection process by, among other things, evaluating the bids submitted by contractors and making a recommendation to the school district regarding which contractor should be awarded the project. Pursuant to defendant's recommendation, the school district eventually awarded the project to US Construction and Design Services, LLC, the contractor that had submitted the second-lowest bid. Plaintiff, the contractor that submitted the lowest bid, sued defendant for tortious interference with a business expectancy.[1]

The trial court granted defendant's motion for summary disposition, concluding that plaintiff did not have a valid business expectancy. In a split decision, the Court of Appeals reversed, holding that a genuine issue of material fact existed in this regard. *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 290 Mich App 577; 802 NW2d 682 (2010). Judge KIRSTEN FRANK KELLY dissented, agreeing with

---

[1] According to defendant, its decision to recommend US Construction rather than plaintiff was predicated on the fact that the references supplied by plaintiff gave negative feedback and US Construction had provided construction services for other projects designed by defendant for the school district and had performed the work adequately. According to plaintiff, on the other hand, defendant's decision to recommend US Construction rather than plaintiff was based on defendant's desire "to punish [plaintiff] for what occurred on the Holly Academy project wherein [defendant] was ultimately replaced by another architect."

2

the trial court that plaintiff did not have a valid business expectancy. We ordered and heard oral argument on whether to grant defendant's application for leave to appeal and specifically asked the parties to

> address whether the Court of Appeals erred when it determined that there are genuine issues of material fact as to (1) whether the plaintiff, a disappointed low bidder on a public contract, had a valid business expectancy and (2) whether the defendant architectural firm's communications, made pursuant to an agreement with the contracting school district, amounted to intentional and improper conduct sufficient to sustain a claim of tortious interference with a business expectancy. [*Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 489 Mich 953, 953-954 (2011).][2]

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011).

## III. ANALYSIS

The elements of tortious interference with a business relationship or expectancy are "'the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff.'" *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 323; 788 NW2d 679 (2010), quoting *BPS Clinical Laboratories v Blue Cross & Blue Shield of Mich (On Remand)*, 217 Mich App 687, 698-699; 552 NW2d 919 (1996). The issue here is whether plaintiff, as the lowest bidder on a public contract, had a valid

---

[2] Because we conclude that plaintiff did not have a valid business expectancy, it is unnecessary for us to address the second issue.

3

business expectancy. In order to establish this, "[t]he expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Trepel v Pontiac Osteopathic Hosp*, 135 Mich App 361, 377; 354 NW2d 341 (1984). We agree with the trial court and the Court of Appeals dissent that plaintiff did not have a valid business expectancy because plaintiff had no reasonable expectation of being awarded the contract, only "wishful thinking."

That plaintiff as the lowest bidder on a public contract had no valid business expectancy is supported by the longstanding rule in Michigan that a disappointed low bidder on a public contract has no standing to sue in order to challenge the award of a contract to another bidder. *Detroit v Wayne Circuit Judge*, 128 Mich 438, 439; 87 NW 376 (1901) ("As a bidder, the complainant has no standing."). In *Talbot Paving Co v Detroit*, 109 Mich 657, 660, 662; 67 NW 979 (1896), this Court held that "the lowest bidder, under a contract proposed to be let by a municipal corporation, whose bid has been rejected, [does not have] a right of action at law to recover profits which he might have made had his bid been accepted." This Court reached this conclusion even though "under the charter of Detroit, it was the duty of the city to let the contract to the lowest responsible bidder . . . ." *Id*. at 660. This Court held that the charter did not provide for a private cause of action because it "was not passed for the benefit of the bidder, but as a protection to the public." *Id*. "The charter provision which required the acceptance of the lowest responsible bid had no reference to any interest which the bidders might have in the premises, but was passed to *protect the interest of the citizens* of the city." *Id.* at 662 (emphasis added); see also *Lasky v City of Bad Axe*, 352 Mich 272, 276; 89 NW2d

4

520 (1958) (stating that these provisions "are enacted for the benefit of property holders and taxpayers, and not for the benefit of or enrichment of bidders").

Given that a contractor that submits the lowest bid cannot bring a cause of action against the municipality when its bid is rejected, even when the municipality has adopted a charter provision that requires it to accept the "lowest responsible bidder," it is difficult to fathom how plaintiff's submission of the lowest bid could have created a valid business expectancy in light of the highly discretionary process of awarding governmental contracts. In terms of whether a valid business expectancy is created, a plaintiff's expectations are entirely the same regardless of whether it alleges that the government has wrongfully denied it the contract or, as here, that a third party has interfered and caused a denial of the contract. In addition to the common-law rule, MCL 380.1267(6) expressly states that "[t]he board, intermediate school board, or board of directors may reject any or all bids . . . ." As the Court of Appeals dissent explained, "when the ultimate decision to enter into a business relationship is, by statute, a highly discretionary decision, a plaintiff cannot establish that its 'business expectancy' [reflected] a reasonable likelihood or possibility and not merely wishful thinking." *Cedroni*, 290 Mich App at 623 (K. F. KELLY, J., dissenting). In light of the common-law rule that a bidder that submits the lowest bid has no cause-of-action against the public entity that rejects this bid and the statutory provision that allows the school district to "reject any or all bids," MCL 380.1267(6), a bidder on a school construction project should know that its submission of the lowest bid does not create a reasonable probability that the school district will award it the contract. See *Lasky*, 352 Mich at 276 ("[O]ne making a bid or entering into a contract with a municipality, acts at his peril; he is

5

supposed to know the law."); see also *EBI-Detroit, Inc v Detroit*, 279 Fed Appx 340, 352 (CA 6, 2008) ("Michigan courts have already rejected the idea that a disappointed bidder has a valid business expectancy in a potential government contract.").[3]

In the instant case, not only should the common-law rule and MCL 380.1267(6) have made plaintiff aware that its submission of the lowest bid did not create a valid business expectancy, but documents provided by the school district before plaintiff even submitted its bid should also have made this perfectly clear. For example, both the advertisement for bids and the instructions to bidders included in the project manual expressly stated that the school district "reserves the right to accept or reject any or all offers." The school district's fiscal management policy also stated multiple times that the school district has the "right to reject any or all bids" and further stated that "the lowest dollar cost bidder may not always receive award of the bid." See *Leavy v City of*

---

[3] The dissent argues that our decision to apply the "disappointed-bidder rule" to private entities is "contrary to the purpose of the disappointed-bidder rule: to protect taxpayers." *Post* at 10. However, if this case had anything at all to do with protecting taxpayers, plaintiff "should have proceeded by injunction to prevent the doing of the work under the [US Construction] contract" instead of "l[ying] by, and, after the work had been done and paid for, ask for profits which it might have made if it had been permitted to perform its contract." *Talbot*, 109 Mich at 659. By adopting MCL 380.1267(6), which allows the school board to "reject any or all bids," the Legislature has determined that the school board is in the best position to "protect taxpayers," and "[t]he law does not give to courts the power to substitute their judgment for the honest judgment of the board." *Kundinger v City of Saginaw*, 132 Mich 395, 405; 93 NW 914 (1903). Finally, as we explain in footnote 8, we are not immunizing from liability a private entity that "acts with dishonesty and bad faith to interfere with the governmental entity's efforts," *post* at 10 n 2; instead, we are simply holding that when the ultimate decision to enter into a business relationship is a highly discretionary decision reposed by law within a governmental entity, a disappointed low bidder does not have a valid business expectancy for the purpose of sustaining a claim of tortious interference with a business expectancy.

*Jackson*, 247 Mich 447, 450; 226 NW 214 (1929), quoting 3 McQuillin, Municipal Corporations (2d ed), p 919 ("Reservation of right to reject any and all bids, where the authorities have power to make such reservation, gives the right to let the contract to any bidder and reject the others, although the one securing the contract is not the lowest bidder[.]"). Finally, Clay Perkins, the superintendent of the school district, averred by affidavit that "[w]hile [plaintiff] submitted the low bid, there was no communication of any intent to accept [plaintiff's] bid." That plaintiff did, in fact, understand that it might not be awarded the contract even though it was the lowest bidder is evidenced by a letter written by plaintiff's president, Richard Cedroni, to the school district, in which he stated:

> We are the apparent low bidders on the Additions and Renovations at Hill and Siple Elementary. I look forward to working with the Davison Schools on this project and I expect you will be more than pleased with my company's performance and professionalism, *if awarded*. [Emphasis added.]

The Court of Appeals recognized that "the submission of the lowest bid, in and of itself, was inadequate to sustain plaintiff's suit" and "reject[ed] any rule per se that would allow litigation to proceed simply on the basis of proof of the lowest bid" because submission of the lowest bid does not, by itself, create a valid business expectancy. *Cedroni*, 290 Mich App at 582.[4] However, the Court concluded that the school district's

---

[4] The dissent, on the other hand, concludes that "once a qualified bidder has submitted a conforming bid and knows that it has provided the lowest bid, there might be a genuine issue of material fact regarding whether the bidder's expectation reasonably elevated from a 'mere hope' to a 'realistic expectation' that it would be awarded the project . . . ." *Post* at 5. This conclusion is simply incompatible with both MCL 380.1267(6), which expressly states that the school board "may reject any or all bids," and the documents presented to plaintiff, which equally clearly state that "the lowest dollar cost bidder may not always receive award of the bid."

fiscal management policy, coupled with plaintiff's submission of the lowest bid, did create a valid business expectancy because the former stated that "[b]ids shall be awarded in compliance with applicable bidding obligations imposed by law to the 'lowest responsible bidder.'"

"Lowest responsible bidder" is defined in the policy as a "responsible contractor," and "responsible contractor" is defined as a "contractor determined by the [school district] to be sufficiently qualified to satisfactorily perform the Construction Project . . . ." The policy then provides a list of factors for the school district to consider in determining whether a contractor is properly characterized as a "responsible contractor," including "an overall review of the Responsibility Criteria," "the input of the District's architect(s)," and "other relevant factors." The "responsibility criteria" include numerous considerations such as "projects completed within the past three (3) years"; "experience with construction techniques, trade standards, project scheduling, cost control, management of projects and building codes, particular to the Construction Project"; "[r]eferences from individuals or entities that have received in the past three (3) years, or that are currently receiving the contractor's services, including information regarding records of performance, job site cooperation, and long term quality standards"; and "any additional criteria that [the school district] may deem relevant for purposes of making a determination of contractor responsibility . . . ."

In *Mago Constr Co v Anderson, Eckstein & Westrick, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 8, 1996 (Docket No. 183479), a case involving facts similar to the instant case, the Court of Appeals affirmed the trial court's order granting the defendant's motion for summary disposition. The defendant

8

was a corporation of professional consulting engineers and the plaintiff was the disappointed lowest bidder. The plaintiff sued the defendant for, among other things, tortious interference with a business expectancy. The Court of Appeals explained, "Where the ultimate decision to enter into a business relationship is a highly discretionary decision reposed within the structure of a governmental entity, it becomes more difficult for a plaintiff to prove that it had an expectancy of doing business with the governmental body." *Mago*, unpub op at 3. The Court of Appeals concluded that the plaintiff had no valid business expectancy because

> the award of the contract was a highly discretionary governmental activity in which "too many factors [were] in play to be able to reasonably infer that . . . plaintiff would have obtained the desired [contract]." Moreover, the bidding instructions clearly informed plaintiff that the lowest bidder was not guaranteed to receive the water main improvement contract. [*Id.* (citation omitted; first alteration in the original).]

Although *Mago* is an unpublished and therefore nonbinding opinion of the Court of Appeals,[5] and, as the dissent points out, the facts in *Mago* are not identical to those in the instant case, we nevertheless find its reasoning persuasive.

In the instant case, although the school district's fiscal management policy provided that the contract would be awarded to the "lowest responsible bidder," the school district itself retained the right to choose the "lowest responsible bidder." The policy provided a nonexhaustive list of factors for the school district to consider, including its architect's input. Therefore, just as in *Mago*, "the award of the contract was

---

[5] MCR 7.215(C)(1) ("An unpublished opinion is not precedentially binding under the rule of stare decisis.").

9

a highly discretionary governmental activity in which 'too many factors [were] in play to be able to reasonably infer that . . . plaintiff [by virtue alone of being the lowest bidder] would have obtained the desired [contract].'" *Id.* (citation omitted; first alteration in the original). In addition, "the bidding instructions clearly informed plaintiff that the lowest bidder was not guaranteed to receive the . . . contract." *Id.* Because the school district retained a broad discretionary right to reject the lowest bidder, plaintiff could not have had a valid business expectancy.[6] See also *Talbot*, 109 Mich 657, and *Leavy*, 247 Mich 447, both of which involved city charters that contained the same "lowest responsible bidder" requirement and yet this Court held that the lowest bidder could not sue on the basis of not being awarded the contract. See also *EBI-Detroit, Inc*, 279 Fed Appx at 343, 353, in which, although the city of Detroit "made it clear that the Belle Isle Project would be awarded to the lowest bidder who was both responsive and responsible," the United States Court of Appeals for the Sixth Circuit held, in an unpublished and nonbinding opinion, that the plaintiff, who was the lowest responsive bidder, "had a 'unilateral hope' of winning the contract, nothing more, so its tortious interference claim cannot proceed." (Citation omitted; emphasis omitted.)

---

[6] The Court of Appeals majority relied, as does the dissent in this Court, on *Joba Constr Co, Inc v Burns & Roe, Inc*, 121 Mich App 615; 329 NW2d 760 (1982), to support its holding that a genuine issue of material fact exists regarding whether plaintiff had a valid business expectancy. However, given that *Joba* "never explained the nature of the evidence presented [in that case] that gave rise to a legitimate business expectancy," we do not find *Joba* to be a particularly helpful decision. *Cedroni*, 290 Mich App at 626 (K. F. KELLY, J., dissenting). Moreover, "[t]his Court, of course, is not bound by Court of Appeals decisions." *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004). Contrary to the dissent's assertion, we do not reject *Joba* simply because it is not binding authority. See *post* at 8 n 1. Rather, we reject *Joba,* and adopt *Mago,* because we find the analysis of *Mago* to be more persuasive than that of *Joba*.

We agree with the Court of Appeals dissent that the school district's fiscal management policy did not afford plaintiff a valid business expectancy. The school district determined that plaintiff was not a "responsible contractor" in this specific circumstance, and it is not our job to second-guess this determination. See *Kundinger v City of Saginaw*, 132 Mich 395, 405; 93 NW 914 (1903) ("The law does not give to courts the power to substitute their judgment for the honest judgment of the board."); *Warda v Flushing City Council*, 472 Mich 326, 333; 696 NW2d 671 (2005) ("Whether the council acted wisely or unwisely, prudently or imprudently, is not for the consideration or determination of this Court."); *Leavy*, 247 Mich at 450, quoting 3 McQuillin, § 1340 ("'The court will indulge the presumption that the authorities acted in good faith in awarding the contract.'").

"'The exercise of discretion to accept or reject bids [involving public contracts] will only be controlled by the courts when necessary to prevent fraud, injustice or the violation of a trust.'" *Leavy*, 247 Mich at 450, quoting 3 McQuillin, § 1340. In this case, there is no evidence that this Court's intervention is "necessary to prevent fraud, injustice or the violation of a trust." Rather, as the Court of Appeals dissent explained, plaintiff "is simply attempting to substitute [its] own judgment for that of the school district," and "[w]hile plaintiff may believe its . . . judgment to be superior to that of the school board, the statute endows the school board, not plaintiff, with the discretion to award contracts in the school board's best interest." *Cedroni*, 290 Mich App at 625 (K. F. KELLY, J., dissenting).[7] Because plaintiff had no valid business expectancy, and because there is no

_____

[7] The dissent states that "plaintiff presented evidence that defendant's opinion and recommendation regarding plaintiff's qualifications might have been improperly

11

evidence that this Court's involvement is "necessary to prevent fraud, injustice or the violation of a trust," plaintiff's claim of tortious interference with a business expectancy must fail as a matter of law.[8]

## IV. CONCLUSION

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the trial court's order granting defendant's motion for summary disposition. As the trial court and the Court of Appeals dissent concluded, plaintiff had no valid business expectancy for the purposes of sustaining a claim of tortious interference with a business expectancy.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

---

influenced by misplaced or unsupported animosity toward plaintiff related to problems between plaintiff and defendant on a previous project." *Post* at 6. However, the only "evidence" that plaintiff has presented to support its allegation that defendant "improperly influenced" the school district are plaintiff's own statements.

[8] Plaintiff argues that an architect should not be immune from liability for making false statements about a low bidder. Similarly, the dissent argues that this Court should "not protect a *private* entity that dishonestly influences the governmental entity." *Post* at 12. However, we do not hold that an architect is "immune from liability" for making false statements about a low bidder. Instead, we simply hold that when the ultimate decision to enter into a business relationship is a highly discretionary decision reposed by law within a public entity, a disappointed low bidder does not have a valid business expectancy for the purpose of sustaining a claim of tortious interference with a business expectancy.

12

CEDRONI ASSOCIATES, INC,

      Plaintiff-Appellee,

v                                    No. 142339

TOMBLINSON, HARBURN
ASSOCIATES, ARCHITECTS &
PLANNERS, INC,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

The issue presented in this case is whether plaintiff has produced sufficient evidence to create a genuine issue of material fact regarding whether defendant tortiously interfered with plaintiff's valid business expectancy. I respectfully dissent from the majority's decision to disregard *Joba Constr Co, Inc v Burns & Roe Inc*, 121 Mich App 615; 329 NW2d 760 (1982). Instead, I would apply *Joba* and affirm the judgment of the Court of Appeals because I do not believe the "disappointed bidder" rule should be extended to the facts of this case.

## I. FACTS AND PROCEDURAL HISTORY

In 2003, Davison Community Schools decided to renovate two elementary schools and contracted with defendant for architectural and engineering services. Under the contract, defendant was to assist the school district during the competitive bidding process "by reviewing and evaluating bid applications, investigating competing

contractors and their references, expressing opinions and views on contractor competence and workmanship, and making recommendations regarding which contractor should be awarded the project." *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 290 Mich App 577, 583; 802 NW2d 682 (2010). Jackie Hoist was defendant's designated representative for the project.

The school district advertised for bids. With respect to the bidding process, the school district's fiscal management policy (FMP) provided that the school district reserved the right to reject any or all bids. The FMP also stated that "[b]ids shall be awarded in compliance with the applicable bidding obligations imposed by law to the 'lowest responsible bidder.'" The FMP defined "lowest responsible bidder" as

> [t]he Responsible Contractor that has submitted a fully complete and responsive bid that provides the lowest net dollar cost for all labor and materials required for the complete performance of the work of the Construction Project let for bid. Such bid must satisfy the requirements of all applicable local, state, and federal laws, this Policy, any administrative rules associated with this Policy developed by the Superintendent at the Board's direction, and bid documents used to solicit bids, and any other guidelines and specifications required for the Construction Project. Because a bidder with the net lowest dollar cost bid may not be a Responsible Contractor, the lowest dollar cost bidder may not always receive award of the bid.

The FMP defines the "Responsible Contractor" as

> [a] contractor determined by the Board to be sufficiently qualified to satisfactorily perform the Construction Project, in accordance with all applicable contractual and legal requirements. The Board's determination shall be based upon: (1) an overall review of the Responsibility Criteria listed below and the contractor's responses, or failure to respond, to same; (2) the contractor's compliance with this Policy and all applicable local, state and federal laws; (3) the input of the District's architect(s) [here defendant] and/or construction manager(s), if any; (4) review of the

2

contractor's proposed subcontractors; and (5) other relevant factors particular to the Construction Project.

It is undisputed that plaintiff was the lowest bidder, having submitted a bid that was $50,000 less than the next-lowest bid, and plaintiff was aware that it had provided the lowest bid. However, Hoist sent a letter to the school district recommending that the district not accept plaintiff's bid and instead accept the bid of the next-lowest bidder, US Construction and Design Services, LLC. Hoist's notes indicated that while several references provided positive reviews of plaintiff's work, other references provided negative feedback and that Hoist had had personal negative experiences with plaintiff on a previous project. Plaintiff alleges that Hoist's notes regarding various references' comments were untrue. Additionally, plaintiff alleges that defendant's recommendation that the school district reject plaintiff's bid was born out of a desire to punish plaintiff for a dispute between defendant and plaintiff on the previous "Holly Academy project" that resulted in defendant's discharge from that project. The record also includes an affidavit and letter from plaintiff's president, Richard Cedroni, challenging the negative opinions in Hoist's notes and stating that plaintiff had never been removed from a project or received a poor review in the past.

The school board's review committee endorsed defendant's recommendation to reject plaintiff's bid, and the school district awarded the project to US Construction, explaining that its decision was made in reliance on defendant's recommendation.

Plaintiff filed a complaint against defendant alleging tortious interference with prospective economic relations, arguing that it had "a legitimate expectancy in obtaining a contract to complete work for the [school] Project," that defendant had "wrongfully

3

persuaded the School District" to reject plaintiff's bid, and that defendant had "intentionally interfered with the expectant business relationship . . . by wrongfully claiming that [plaintiff] was unqualified to perform" the necessary work. Defendant moved for summary disposition, which was eventually granted under MCR 2.116(C)(10).

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition de novo. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010). A motion brought under MCR 2.116(C)(10) tests the factual support for a party's cause of action. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmoving party, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The trial court's task in reviewing the motion entails consideration of the record evidence and all reasonable inferences arising from that evidence. *Skinner*, 445 Mich at 161.

## III. ANALYSIS

The elements for a claim of tortious interference with advantageous business relationships or prospective economic relations are

> (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted. [*Joba*, 121 Mich App at 634.]

4

At issue in this case is whether plaintiff had a "valid business expectancy." To avoid summary disposition, a plaintiff must assert "a *specific* and *reasonable* prospective economic advantage that was interfered with." *Id.* The business expectation must be proved "with some degree of specificity" so that it is a "realistic expectation and not merely wishful thinking," "mere hope," or "the innate optimism of the salesman." *Id.* at 634-635 (quotation marks and citations omitted). However, a plaintiff "need not demonstrate a guaranteed relationship" given the prospective nature of the expectation at issue. *Id.* at 635 (quotation marks and citations omitted); see, also, *Trepel v Pontiac Osteopathic Hosp*, 135 Mich App 361, 377; 354 NW2d 341 (1984).

Although it is generally difficult to claim that a bid—which, at its heart is an offer to perform the work for a specified price—can generate a realistic expectation in the bidder that it will be awarded the project, plaintiff did not merely submit a bid in this case. Rather, plaintiff was informed that it was the lowest bidder. In my view, once a qualified bidder has submitted a conforming bid and knows that it has provided the lowest bid, there might be a genuine issue of material fact regarding whether the bidder's expectation reasonably elevated from a "mere hope" to a "realistic expectation" that it would be awarded the project, *especially* in this case, given that the bidding materials provided by the school district stated that the project "shall" be awarded to the "lowest responsible bidder." See *Joba*, 121 Mich App at 635 (concluding that "the lowest qualified bidder" has a "legitimate expectancy in obtaining the contracts").

Accordingly, given that plaintiff was aware of its status as the lowest bidder, and keeping in mind that plaintiff "need not demonstrate a guaranteed relationship," *id.* (quotation marks and citations omitted), I believe that plaintiff might have had a valid

5

business expectation as long as plaintiff was able to establish a genuine issue of material fact regarding whether it was a responsible bidder.

Although defendant's investigation and opinion of plaintiff's qualifications are certainly valid considerations in determining whether plaintiff was a responsible bidder, the parties presented conflicting evidence regarding plaintiff's qualifications. While I do not think that the mere fact that plaintiff believed that it was qualified is sufficient to avoid summary disposition on this issue, plaintiff presented evidence that defendant's opinion and recommendation regarding plaintiff's qualifications might have been improperly influenced by misplaced or unsupported animosity toward plaintiff related to problems between plaintiff and defendant on a previous project. Plaintiff's evidence included Hoist's allegedly untrue notes regarding plaintiff's qualifications, which included reviews from individuals who had previously worked with plaintiff, and Richard Cedroni's affidavit and letter showing that plaintiff had never been removed from a project or received a poor review in the past. This evidence establishes that plaintiff had a realistic expectation that it would qualify as a responsible bidder. This conclusion, in turn, gives rise to a question of material fact about whether plaintiff had a valid business expectancy in being awarded the contract. Thus, because the evidence must be viewed in the light most favorable to plaintiff as the nonmoving party, and because determining whether plaintiff was "qualified" or "responsible" is largely a question of fact on which both parties have presented conflicting evidence, I would affirm the judgment of the Court of Appeals.

As the majority notes, however, a specific line of cases beginning with *Talbot Paving Co v Detroit*, 109 Mich 657; 67 NW 979 (1896), generally hold that a

6

disappointed bidder on a public contract does not have a cause of action regardless of the bidder's qualifications or the value of the bid offered. See, also, *Kundinger v City of Saginaw*, 132 Mich 395, 405; 93 NW 914 (1903) (stating that courts cannot "substitute their judgment for the honest judgment of the [governmental entity]"). Generally, the theory supporting this rule is that competitive bidding is designed to benefit the taxpayers rather than the bidders. See *Lasky v City of Bad Axe*, 352 Mich 272, 276; 89 NW2d 520 (1958).

Notably, however, the "disappointed bidder" rule developed by this line of cases has generally been applied only when the plaintiff files suit against the contracting governmental entity rather than another private entity. Indeed, in *Joba*, 121 Mich App 615, the Court of Appeals did not apply the disappointed-bidder rule in a dispute between two private entities under circumstances very similar to this case.

In *Joba,* the plaintiff was the lowest bidder for a contract with the city of Detroit. The defendant had been retained by the city to evaluate bids and make recommendations regarding which bidders to select for certain contracts, including the contract on which the plaintiff was the lowest bidder. The defendant recommended that the city not accept the plaintiff's bid because, in the defendant's opinion, the plaintiff was unqualified to perform the contract. However, just as in this case, there was also evidence presented that animosity existed between the defendant and the plaintiff, partially resulting from past interaction on a different project. The case went to trial, the jury returned a verdict in favor of the plaintiff, and the defendant sought a directed verdict, which the trial court denied. Accordingly, the *Joba* Court considered the defendant's appeal of the trial court's denial of a directed verdict in the light most favorable to the plaintiff as the

7

nonmoving party, and it concluded that the "plaintiff presented sufficient evidence to create a question of fact as to whether it was the lowest qualified bidder and thus had a legitimate expectancy in obtaining the contracts . . . ." *Id.* at 635. As previously stated, *Joba* did not apply the disappointed-bidder rule to the dispute between the two *private* entities.

The majority, however, summarily discards *Joba* as not "particularly helpful," *ante* at 10 n 6, and instead relies on *Mago Constr Co v Anderson, Eckstein & Westrick, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 8, 1996 (Docket No. 183479), to support its argument that the disappointed-bidder rule should apply in this case. *Mago*, however, is unpersuasive for a variety of reasons. First, to the extent that *Mago* is inconsistent with *Joba*, *Joba* should be given greater weight because, as the majority concedes, "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1).[1] Second, regardless of the relative precedential value of the two opinions, *Mago* is distinguishable on its facts because,

---

[1] I recognize that, under MCR 7.215(J), the Court of Appeals was not bound to follow *Joba*, because *Joba* was issued before November 1, 1990. However, when faced with two nonbinding opinions reaching different results on the same issue, the Court of Appeals properly gave more weight to the published opinion. Moreover, *Mago* is distinguishable from this case for the reasons discussed later in this opinion. Finally, the majority's decision to reject *Joba* in part because this Court is not bound by the Court of Appeals' opinions, see *ante* at 10 n 6, citing *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004), is perplexing given the majority's reliance on a single unpersuasive and unpublished Court of Appeals opinion to extend the disappointed-bidder rule beyond its traditional scope. The majority's conclusion that *Mago* is more persuasive than *Joba* is equally perplexing, given that *Joba* is exactly on point and consistent with the traditional scope of the disappointed-bidder rule, while *Mago* is entirely distinguishable for the reasons discussed later in this opinion.

8

unlike plaintiff in this case, the plaintiff in *Mago* submitted a *nonconforming bid*. Accordingly, *Mago* held that "the fact that plaintiff submitted a nonconforming bid should have negated any expectation that it might have had regarding the possibility of receiving the contract." *Mago*, unpub op at 3.

Likewise, the majority's reliance on an unpublished opinion of the United States Court of Appeals for the Sixth Circuit, *EBI-Detroit, Inc v Detroit*, 279 Fed Appx 340 (CA 6, 2008), in support of its extension of the disappointed-bidder rule to a dispute between two private entities is misplaced. Specifically, *EBI-Detroit*, 279 Fed Appx at 352-353, cited *Timmons v Bone*, unpublished opinion per curiam of the Court of Appeals, issued April 23, 2002 (Docket No. 228942), p 2, which had rejected a tortious-interference claim because the plaintiff "did not meet the minimum qualifications for obtaining the . . . contract . . . ." Accordingly, all the cases cited by the majority in support of its decision to extend the disappointed-bidder rule are both unpublished and distinguishable because the plaintiffs in those cases failed to satisfy the requirements for submitting a conforming bid. While I agree that submission of a nonconforming bid might be insufficient, as a matter of law, to create a valid business expectancy for purposes of a claim of tortious interference, there is nothing in the record indicating that plaintiff's bid in this case was nonconforming. Accordingly, the majority's position is without support in the caselaw. The Court of Appeals' opinion in this case, however, is fully supported by the directly applicable opinion in *Joba*.

Furthermore, unlike the majority's holding in this case, *Joba*'s decision to limit the disappointed-bidder rule to suits against governmental entities is consistent with the purpose of that rule. Specifically, by declining to provide private entities with the same

9

protection from suit granted to governmental entities, *Joba* ensures that taxpayers obtain the best price possible for public contracts, free of improper interference by private entities. As evidenced by the facts of *Joba* and, potentially, the facts of this case, private entities may be motivated to make contracting decisions for reasons that are not consistent with the purpose of competitive bidding for government contracts. Because these potential motivations may not result in the selection of the "lowest responsible bidder," they are contrary to the purpose of the disappointed-bidder rule: to protect taxpayers.[2]

Finally, this Court's opinions establishing the disappointed-bidder rule do not mandate the majority's result. To begin with, the rule should not apply to protect private entities for the reasons previously discussed. Moreover, in *Kundinger*, 132 Mich at 405, this Court explained that courts cannot "substitute their judgment for the *honest judgment* of the [governmental entity]." (Emphasis added.) Similarly, in *Leavy v City of Jackson*, 247 Mich 447, 450; 226 NW 214 (1929), quoting 3 McQuillin, Municipal Corporations

---

[2] The majority misconstrues my discussion of the purpose of the disappointed-bidder rule. See *ante* at 6 n 3. As stated previously, in my view the disappointed-bidder rule should not be extended to protect private entities and, thus, should not apply in this case. I merely discuss the purpose of the disappointed-bidder rule to show that, by extending the rule's protections beyond governmental entities, the majority's holding is contrary to the purpose of the very rule that it applies. Stated differently, the purpose underlying competitive bidding on public contracts and the disappointed-bidder rule is to ensure that taxpayers obtain the best possible price from a qualified contractor. I agree with the majority that the Legislature has determined that the governmental entity is generally in the best position to carry out that purpose. However, the governmental entity is deprived of its ability to carry out that purpose when a private entity, such as defendant in this case, allegedly acts with dishonesty and bad faith to interfere with the governmental entity's efforts.

10

(2d ed), § 1340, this Court stated that "'[t]he court will indulge the presumption that the authorities *acted in good faith* in awarding the contract.'" (Emphasis added.) Accordingly, the disappointed-bidder rule is premised on a governmental entity's ability to exercise "honest" and "good faith" discretion.[3]

However, when a private entity intentionally provides inaccurate or misleading information to a governmental entity and the governmental entity in turn relies on that information in making a contracting decision, the private entity has injected dishonesty and bad faith into the decision-making process. Accordingly, the bidding process results in an "injustice," and courts may intervene without impermissibly interfering with the governmental entity's exercise of discretion in making contracting decisions. See *Leavy*, 247 Mich at 450 (stating that courts may intervene in the public bidding process to prevent an "injustice") (quotation marks and citation omitted). Stated more simply, if plaintiff had lost the contract in this case solely because the school district had exercised its discretion free of improper influence and selected a bidder other than plaintiff, I would agree that plaintiff has no claim. However, because plaintiff has established a genuine issue of material fact in regard to whether it lost the contract because *defendant* acted dishonestly and in bad faith by improperly interfering with the school district's decision, I

---

[3] Plaintiff's letter to the school board, which the majority cites, see *ante* at 7, merely recognizes the *school district's* discretion in selecting a bidder. The letter cannot be reasonably interpreted as implying that plaintiff consented to defendant's alleged efforts to *improperly influence* the school district's exercise of that discretion.

11

believe that plaintiff may have a valid claim for tortious interference under *Joba*.[4]  Thus, in my view, defendant is not entitled to summary disposition.

Accordingly, although a *governmental* entity is entitled to deference regarding its discretionary selection of a bidder under this Court's jurisprudence, that caselaw does not protect a *private* entity that dishonestly influences the governmental entity.  All the various documents and statutes that the majority cites to establish the fact that the school district in this case had the authority to reject any and all bids are rooted in deference to the school district's discretion in making contracting decisions.  However, this case raises the separate issue of whether the deference afforded to governmental entities should be extended to protect private entities, even when the private entity dishonestly influences the governmental entity's discretion.  Moreover, because this case is at the summary disposition stage, we must view the evidence in the light most favorable to plaintiff as the nonmoving party.  Doing so, I believe that plaintiff has presented sufficient evidence to create a genuine issue of material fact regarding whether plaintiff met the definition of "lowest responsible bidder" as well as whether defendant's recommendation to the school district was the result of a personal vendetta against plaintiff.  Thus, because *Joba* is the

---

[4] Even the Court of Appeals dissent in this case recognized that "a plaintiff does have a legitimate expectancy that the bid it submits will be evaluated *fairly* and openly and will be subject to the same or similar scrutiny as other bids, so that the plaintiff's bid stands on an even playing field with all other bids."  *Cedroni*, 290 Mich App at 623 (K. F. KELLY, J., dissenting) (emphasis added).

most relevant published opinion, and *Joba*'s 30-year-old holding is consistent with the purpose of the disappointed-bidder rule, I would apply *Joba* and affirm the judgment of the Court of Appeals.

Michael F. Cavanagh
Marilyn Kelly
Diane M. Hathaway