CAVANAGH, J.
(dissenting). The issue presented in this case is whether plaintiff has produced sufficient evidence to create a genuine issue of material fact regarding whether defendant tortiously interfered with plaintiffs valid business expectancy. I respectfully dissent from the majority’s decision to disregard Joba Constr Co, Inc v Burns & Roe Inc, 121 Mich App 615; 329 NW2d 760 (1982). Instead, I would apply Joba and affirm the judgment of the Court of Appeals because I *55 do not believe the “disappointed bidder” rule should be extended to the facts of this case.
I. FACTS AND PROCEDURAL HISTORY
In 2003, Davison Community Schools decided to renovate two elementary schools and contracted with defendant for architectural and engineering services. Under the contract, defendant was to assist the school district during the competitive bidding process “by reviewing and evaluating bid applications, investigating competing contractors and their references, expressing opinions and views on contractor competence and workmanship, and making recommendations regarding which contractor should be awarded the project.” Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc, 290 Mich App 577, 583; 802 NW2d 682 (2010). Jackie Hoist was defendant’s designated representative for the project.
The school district advertised for bids. With respect to the bidding process, the school district’s fiscal management policy (FMP) provided that the school district reserved the right to reject any or all bids. The FMP also stated that “[b]ids shall be awarded in compliance with the applicable bidding obligations imposed by law to the ‘lowest responsible bidder.’ ” The FMP defined “lowest responsible bidder” as
[t]he Responsible Contractor that has submitted a fully complete and responsive bid that provides the lowest net dollar cost for all labor and materials required for the complete performance of the work of the Construction Project let for bid. Such bid must satisfy the requirements of all applicable local, state, and federal laws, this Policy, any administrative rules associated with this Policy developed by the Superintendent at the Board’s direction, and bid documents used to solicit bids, and any other guidelines and specifications required for the Construction Project. *56 Because a bidder with the net lowest dollar cost bid may not be a Responsible Contractor, the lowest dollar cost bidder may not always receive award of the bid.
The FMP defines the “Responsible Contractor” as
[a] contractor determined by the Board to be sufficiently qualified to satisfactorily perform the Construction Project, in accordance with all applicable contractual and legal requirements. The Board’s determination shall be based upon: (1) an overall review of the Responsibility Criteria listed below and the contractor’s responses, or failure to respond, to same; (2) the contractor’s compliance with this Policy and all applicable local, state and federal laws; (3) the input of the District’s architect(s) [here defendant] and/or construction manager(s), if any; (4) review of the contractor’s proposed subcontractors; and (5) other relevant factors particular to the Construction Project.
It is undisputed that plaintiff was the lowest bidder, having submitted a bid that was $50,000 less than the next-lowest bid, and plaintiff was aware that it had provided the lowest bid. However, Hoist sent a letter to the school district recommending that the district not accept plaintiffs bid and instead accept the bid of the next-lowest bidder, US Construction and Design Services, LLC. Hoist’s notes indicated that while several references provided positive reviews of plaintiffs work, other references provided negative feedback and that Hoist had had personal negative experiences with plaintiff on a previous project. Plaintiff alleges that Hoist’s notes regarding various references’ comments were untrue. Additionally, plaintiff alleges that defendant’s recommendation that the school district reject plaintiffs bid was born out of a desire to punish plaintiff for a dispute between defendant and plaintiff on the previous “Holly Academy project” that resulted in defendant’s discharge from that project. The record also *57 includes an affidavit and letter from plaintiffs president, Richard Cedroni, challenging the negative opinions in Hoist’s notes and stating that plaintiff had never been removed from a project or received a poor review in the past.
The school board’s review committee endorsed defendant’s recommendation to reject plaintiffs bid, and the school district awarded the project to US Construction, explaining that its decision was made in reliance on defendant’s recommendation.
Plaintiff filed a complaint against defendant alleging tortious interference with prospective economic relations, arguing that it had “a legitimate expectancy in obtaining a contract to complete work for the [school] Project,” that defendant had “wrongfully persuaded the School District” to reject plaintiffs bid, and that defendant had “intentionally interfered with the expectant business relationship ... by wrongfully claiming that [plaintiff] was unqualified to perform” the necessary work. Defendant moved for summary disposition, which was eventually granted under MCR 2.116(C)(10).
II. STANDARD OF REVIEW
This Court reviews de novo a trial court’s decision on a motion for summary disposition de novo. Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp, 486 Mich 311, 317; 783 NW2d 695 (2010). A motion brought under MCR 2.116(0(10) tests the factual support for a party’s cause of action. Skinner v Square D Co, 445 Mich 153, 161; 516 NW2d 475 (1994). A trial court may grant a motion for summary disposition under MCR 2.116(0(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmoving party, show that there is no genuine issue with respect to any material fact. Quinto *58 v Cross & Peters Co, 451 Mich 358, 362; 547 NW2d 314 (1996). The trial court’s task in reviewing the motion entails consideration of the record evidence and all reasonable inferences arising from that evidence. Skinner, 445 Mich at 161.
III. ANALYSIS
The elements for a claim of tortious interference with advantageous business relationships or prospective economic relations are
(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted. [Joba, 121 Mich App at 634.]
At issue in this case is whether plaintiff had a “valid business expectancy.” To avoid summary disposition, a plaintiff must assert “a specific and reasonable prospective economic advantage that was interfered with.” Id. The business expectation must be proved “with some degree of specificity” so that it is a “realistic expectation and not merely wishful thinking,” “mere hope,” or “the innate optimism of the salesman.” Id. at 634-635 (quotation marks and citations omitted). However, a plaintiff “need not demonstrate a guaranteed relationship” given the prospective nature of the expectation at issue. Id. at 635 (quotation marks and citations omitted); see, also, Trepel v Pontiac Osteopathic Hosp, 135 Mich App 361, 377; 354 NW2d 341 (1984).
Although it is generally difficult to claim that a bid — which, at its heart is an offer to perform the work for a specified price — can generate a realistic expectation in the bidder that it will be awarded the project, *59 plaintiff did not merely submit a bid in this case. Rather, plaintiff was informed that it was the lowest bidder. In my view, once a qualified bidder has submitted a conforming bid and knows that it has provided the lowest bid, there might be a genuine issue of material fact regarding whether the bidder’s expectation reasonably elevated from a “mere hope” to a “realistic expectation” that it would be awarded the project, especially in this case, given that the bidding materials provided by the school district stated that the project “shall” be awarded to the “lowest responsible bidder.” See Joba, 121 Mich App at 635 (concluding that “the lowest qualified bidder” has a “legitimate expectancy in obtaining the contracts”).
Accordingly, given that plaintiff was aware of its status as the lowest bidder, and keeping in mind that plaintiff “need not demonstrate a guaranteed relationship,” id. (quotation marks and citations omitted), I believe that plaintiff might have had a valid business expectation as long as plaintiff was able to establish a genuine issue of material fact regarding whether it was a responsible bidder.
Although defendant’s investigation and opinion of plaintiffs qualifications are certainly valid considerations in determining whether plaintiff was a responsible bidder, the parties presented conflicting evidence regarding plaintiffs qualifications. While I do not think that the mere fact that plaintiff believed that it was qualified is sufficient to avoid summary disposition on this issue, plaintiff presented evidence that defendant’s opinion and recommendation regarding plaintiffs qualifications might have been improperly influenced by misplaced or unsupported animosity toward plaintiff related to problems between plaintiff and defendant on a previous project. Plaintiffs evidence included Hoist’s *60 allegedly untrue notes regarding plaintiffs qualifications, which included reviews from individuals who had previously worked with plaintiff, and Richard Cedroni’s affidavit and letter showing that plaintiff had never been removed from a project or received a poor review in the past. This evidence establishes that plaintiff had a realistic expectation that it would qualify as a responsible bidder. This conclusion, in turn, gives rise to a question of material fact about whether plaintiff had a valid business expectancy in being awarded the contract. Thus, because the evidence must be viewed in the light most favorable to plaintiff as the nonmoving party, and because determining whether plaintiff was “qualified” or “responsible” is largely a question of fact on which both parties have presented conflicting evidence, I would affirm the judgment of the Court of Appeals.
As the majority notes, however, a specific line of cases beginning with Talbot Paving Co v Detroit, 109 Mich 657; 67 NW 979 (1896), generally hold that a disappointed bidder on a public contract does not have a cause of action regardless of the bidder’s qualifications or the value of the bid offered. See, also, Kundinger v City of Saginaw, 132 Mich 395, 405; 93 NW 914 (1903) (stating that courts cannot “substitute their judgment for the honest judgment of the [governmental entity]”). Generally, the theory supporting this rule is that competitive bidding is designed to benefit the taxpayers rather than the bidders. See Lasky v City of Bad Axe, 352 Mich 272, 276; 89 NW2d 520 (1958).
Notably, however, the “disappointed bidder” rule developed by this line of cases has generally been applied only when the plaintiff files suit against the contracting governmental entity rather than another private entity. Indeed, in Joba, 121 Mich App 615, the Court of Appeals did not apply the disappointed-bidder *61 rule in a dispute between two private entities under circumstances very similar to this case.
In Joba, the plaintiff was the lowest bidder for a contract with the city of Detroit. The defendant had been retained by the city to evaluate bids and make recommendations regarding which bidders to select for certain contracts, including the contract on which the plaintiff was the lowest bidder. The defendant recommended that the city not accept the plaintiffs bid because, in the defendant’s opinion, the plaintiff was unqualified to perform the contract. However, just as in this case, there was also evidence presented that animosity existed between the defendant and the plaintiff, partially resulting from past interaction on a different project. The case went to trial, the jury returned a verdict in favor of the plaintiff, and the defendant sought a directed verdict, which the trial court denied. Accordingly, the Joba Court considered the defendant’s appeal of the trial court’s denial of a directed verdict in the light most favorable to the plaintiff as the nonmoving party, and it concluded that the “plaintiff presented sufficient evidence to create a question of fact as to whether it was the lowest qualified bidder and thus had a legitimate expectancy in obtaining the contracts . . ..” Id. at 635. As previously stated, Joba did not apply the disappointed-bidder rule to the dispute between the two private entities.
The majority, however, summarily discards Joba as not “particularly helpful,” ante at 52 n 6, and instead relies on Mago Constr Co v Anderson, Eckstein & Westrick, Inc, unpublished opinion per curiam of the Court of Appeals, issued November 8, 1996 (Docket No. 183479), to support its argument that the disappointed-bidder rule should apply in this case. Mago, however, is unpersuasive for a variety of reasons. First, to the *62 extent that Mago is inconsistent with Joba, Joba should be given greater weight because, as the majority concedes, “[a]n unpublished opinion is not precedentially binding under the rule of stare decisis.” MCR 7.215(C)(1).[1] Second, regardless of the relative precedential value of the two opinions, Mago is distinguishable on its facts because, unlike plaintiff in this case, the plaintiff in Mago submitted a nonconforming bid. Accordingly, Mago held that “the fact that plaintiff submitted a nonconforming bid should have negated any expectation that it might have had regarding the possibility of receiving the contract.” Mago, unpub op at 3.
Likewise, the majority’s reliance on an unpublished opinion of the United States Court of Appeals for the Sixth Circuit, EBI-Detroit, Inc v Detroit, 279 Fed Appx 340 (CA 6, 2008), in support of its extension of the disappointed-bidder rule to a dispute between two private entities is misplaced. Specifically, EBI-Detroit, 279 Fed Appx at 352-353, cited Timmons v Bone, unpublished opinion per curiam of the Court of Appeals, issued April 23, 2002 (Docket No. 228942), p 2, which had rejected a tortious-interference claim because the *63 plaintiff “did not meet the minimum qualifications for obtaining the . . . contract. . . Accordingly, all the cases cited by the majority in support of its decision to extend the disappointed-bidder rule are both unpublished and distinguishable because the plaintiffs in those cases failed to satisfy the requirements for submitting a conforming bid. While I agree that submission of a nonconforming bid might be insufficient, as a matter of law, to create a valid business expectancy for purposes of a claim of tortious interference, there is nothing in the record indicating that plaintiffs bid in this case was nonconforming. Accordingly, the majority’s position is without support in the caselaw. The Court of Appeals’ opinion in this case, however, is fully supported by the directly applicable opinion in Joba.
Furthermore, unlike the majority’s holding in this case, Joba’s decision to limit the disappointed-bidder rule to suits against governmental entities is consistent with the purpose of that rule. Specifically, by declining to provide private entities with the same protection from suit granted to governmental entities, Joba ensures that taxpayers obtain the best price possible for public contracts, free of improper interference by private entities. As evidenced by the facts of Joba and, potentially, the facts of this case, private entities may be motivated to make contracting decisions for reasons that are not consistent with the purpose of competitive bidding for government contracts. Because these potential motivations may not result in the selection of the “lowest responsible bidder,” they are contrary to the purpose of the disappointed-bidder rule: to protect taxpayers.[2]
*64 Finally, this Court’s opinions establishing the disappointed-bidder rule do not mandate the majority’s result. To begin with, the rule should not apply to protect private entities for the reasons previously discussed. Moreover, in Kundinger, 132 Mich at 405, this Court explained that courts cannot “substitute their judgment for the honest judgment of the [governmental entity].” (Emphasis added.) Similarly, in Leavy v City of Jackson, 247 Mich 447, 450; 226 NW 214 (1929), quoting 3 McQuillin, Municipal Corporations (2d ed), § 1340, this Court stated that “ ‘[t]he court will indulge the presumption that the authorities acted in good faith in awarding the contract.’ ” (Emphasis added.) Accordingly, the disappointed-bidder rule is premised on a governmental entity’s ability to exercise “honest” and “good faith” discretion.[3]
However, when a private entity intentionally provides inaccurate or misleading information to a governmental entity and the governmental entity in turn relies on that information in making a contracting *65 decision, the private entity has injected dishonesty and bad faith into the decision-making process. Accordingly, the bidding process results in an “injustice,” and courts may intervene without impermissibly interfering with the governmental entity’s exercise of discretion in making contracting decisions. See Leavy, 247 Mich at 450 (stating that courts may intervene in the public bidding process to prevent an “injustice”) (quotation marks and citation omitted). Stated more simply, if plaintiff had lost the contract in this case solely because the school district had exercised its discretion free of improper influence and selected a bidder other than plaintiff, I would agree that plaintiff has no claim. However, because plaintiff has established a genuine issue of material fact in regard to whether it lost the contract because defendant acted dishonestly and in bad faith by improperly interfering with the school district’s decision, I believe that plaintiff may have a valid claim for tortious interference under Joba.[4] Thus, in my view, defendant is not entitled to summary disposition.
Accordingly, although a governmental entity is entitled to deference regarding its discretionary selection of a bidder under this Court’s jurisprudence, that caselaw does not protect a private entity that dishonestly influences the governmental entity. All the various documents and statutes that the majority cites to establish the fact that the school district in this case had the authority to reject any and all bids are rooted in deference to the school district’s discretion in making contracting decisions. However, this case raises the *66 separate issue of whether the deference afforded to governmental entities should be extended to protect private entities, even when the private entity dishonestly influences the governmental entity’s discretion. Moreover, because this case is at the summary disposition stage, we must view the evidence in the light most favorable to plaintiff as the nonmoving party. Doing so, I believe that plaintiff has presented sufficient evidence to create a genuine issue of material fact regarding whether plaintiff met the definition of “lowest responsible bidder” as well as whether defendant’s recommendation to the school district was the result of a personal vendetta against plaintiff. Thus, because Joba is the most relevant published opinion, and Joba’s 30-year-old holding is consistent with the purpose of the disappointed-bidder rule, I would apply Joba and affirm the judgment of the Court of Appeals.
Marilyn Kelly and Hathaway, JJ., concurred with Cavanagh, J.

 I recognize that, under MCR 7.215(J), the Court of Appeals was not hound to follow Joba, because Joba was issued before November 1, 1990. However, when faced with two nonbinding opinions reaching different results on the same issue, the Court of Appeals properly gave more weight to the published opinion. Moreover, Mago is distinguishable from this case for the reasons discussed later in this opinion. Finally, the majority’s decision to reject Joba in part because this Court is not bound by the Court of Appeals’ opinions, see ante at 52 n 6, citing Catalina Mktg Sales Corp v Dep’t of Treasury, 470 Mich 13, 23; 678 NW2d 619 (2004), is perplexing given the majority’s reliance on a single unpersuasive and unpublished Court of Appeals opinion to extend the disappointed-bidder rule beyond its traditional scope. The majority’s conclusion that Mago is more persuasive than Joba is equally perplexing, given that Joba is exactly on point and consistent with the traditional scope of the disappointed-bidder rule, while Mago is entirely distinguishable for the reasons discussed later in this opinion.

 The majority misconstrues my discussion of the purpose of the disappointed-bidder rule. See ante at 47-48 n 3. As stated previously, in my view the disappointed-bidder rule should not be extended to protect *64 private entities and, thus, should not apply in this case. I merely discuss the purpose of the disappointed-bidder rule to show that, by extending the rule’s protections beyond governmental entities, the majority’s holding is contrary to the purpose of the very rule that it applies. Stated differently, the purpose underlying competitive bidding on public contracts and the disappointed-bidder rule is to ensure that taxpayers obtain the best possible price from a qualified contractor. I agree with the majority that the Legislature has determined that the governmental entity is generally in the best position to carry out that purpose. However, the governmental entity is deprived of its ability to carry out that purpose when a private entity, such as defendant in this case, allegedly acts with dishonesty and bad faith to interfere with the governmental entity’s efforts.

 Plaintiffs letter to the school board, which the majority cites, see ante at 49, merely recognizes the school district’s discretion in selecting a bidder. The letter cannot be reasonably interpreted as implying that plaintiff consented to defendant’s alleged efforts to improperly influence the school district’s exercise of that discretion.

 Even the Court of Appeals dissent in this case recognized that “a plaintiff does have a legitimate expectancy that the bid it submits will be evaluated fairly and openly and will be subject to the same or similar scrutiny as other bids, so that the plaintiffs bid stands on an even playing field with all other bids.” Cedroni, 290 Mich App at 623 (K. F. Kelly, J., dissenting) (emphasis added).