## LASKY *v.* CITY OF BAD AXE.

1. MUNICIPAL CORPORATIONS—CONTRACTS.

   One contracting with a municipal corporation is bound to take notice of the limitations on its power to contract.

2. SAME—SEWAGE DISPOSAL PLANT—CONSTRUCTION CONTRACTS—BIDS.

   Contracts with a municipal corporation for the construction of a sewage disposal plant must be let on sealed competitive bids and be let to the lowest responsible bidder deemed competent to do the work (CL 1948, § 108.5).

3. SAME—CONTRACTS—PUBLIC WORKS—CONSTRUCTION OF STATUTES.

   Statutes pertaining to the letting of contracts for the construction of public works are enacted for the benefit of property holders and taxpayers, not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest and are to be strictly construed and not extended beyond their reasonable purport (CL 1948, § 108.5).

4. SAME—VARIATION OF SPECIFICATIONS IN BIDS FOR CONTRACT FOR PUBLIC WORKS.

   Any variation from specifications for the construction of a public works will destroy the competitive character of the bid, if such variation is substantial.

5. SAME—SUBSTITUTIONS ON AMENDED BID—SEWAGE DISPOSAL PLANT CONSTRUCTION CONTRACT.

   Bidder who negotiated substitutions in contract for construction of sewage disposal plant and thereby reduced his bid by

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Municipal Corporations §§ 495, 708.
[2] 43 Am Jur, Public Works and Contracts §§ 25, 42.
[3] 43 Am Jur, Public Works and Contracts § 26.
[4, 5] 43 Am Jur, Public Works and Contracts § 40.
    Bidder's variation from specifications on bid for public works.   65 ALR 835.

$7,000 and was thereupon formally · awarded a contract for the work by defendant city was not entitled to damages for city's rescission thereof, since the amended bid was a nullity and he never had a contract (CL 1948, § 108.5).

Appeal from Huron; Quinn (Timothy C.), J., presiding. Submitted January 15, 1958. (Docket No. 52, Calendar No. 47,559.) Decided April 14, 1958.

Action by Chester Lasky, doing business as Lasky Construction Company, against the City of Bad Axe, a municipal corporation, for breach of contract for construction of sewage disposal plant. Judgment for defendant. Plaintiff appeals. Affirmed.

*Karl K. Leibrand,* for plaintiff.

*Frederick S. Beach* and *Alfred H. Sauer,* for defendant.

VOELKER, J.  The city of Bad Axe, a fourth-class city, wanted a sewage disposal plant and in November of 1953, after some years of consultation and planning with experts, it advertised for sealed bids for the construction of such a plant in accordance with rather elaborate specifications furnished by its engineer.  Six bids were received and they were duly opened at a meeting of the council of defendant city held December 14, 1953, whereupon it appeared that plaintiff's bid was $309,250 on the basis of a 360-day completion of the job, and that the bid of a party named Booms was $310,999.93 for a 290-day completion. The remaining 4 bids were higher, ranging from $323,500 to over $400,000.

The specifications called for the furnishing of a supervisory resident engineer by defendant municipality during construction of the plant at $35 per day, and there arose a dispute at the council meeting regarding which of the 2 bids, plaintiff's or Booms',

was actually the lower, since the 360-day completion period incorporated in plaintiff's bid would result in a higher total cost to defendant considering the additional 70 days it would have to pay the supervisory engineer under plaintiff's than under Booms' bid with its shorter completion time. There was much talk but no formal action was taken at that time.

In any event the parties to this suit as well as Booms immediately began a merry round of altering bids and specifications as follows:

Booms undertook to change his bid the night of the council meeting by agreeing to a liquidated damage clause, and by letter dated the next day, December 15, 1953, reduced the amount of his bid to $299,136. Plaintiff, nothing daunted, by letter dated December 19, 1953, also agreed to a liquidated damage clause and reduced his completion date from 360 days, as originally bid by him, to 290 days, the same as Booms' bid. The city's consulting engineers, by letter dated December 19, 1953, recommended acceptance of plaintiff's original bid, which letter also indicates receipt by the engineers of Booms' amended bid contained in his letter of December 15, 1953.

Sometime between the following Christmas and New Years Day, 4 members of the 6-member city council of defendant made a holiday pilgrimage to plaintiff's office for the apparent purpose of persuading him to further reduce his bid. Plaintiff finally agreed to a reduction of $7,000 if certain changes in the specifications could be made, viz.: substituting welded joints for screw joints in the guard rails and cement blocks for brick in 6 manholes. The proposed changes were agreed to and plaintiff, on January 4, 1954, submitted an amended bid for $7,000 less than his original bid, on the basis of such changes, and the council, on January 4, 1954, unanimously voted

to accept the amended bid of plaintiff. The specifications, as thus amended, were up to this point never readvertised for bids.

On January 20, 1954, the city council passed a resolution rescinding the resolution of January 4, 1954, which had purported to accept plaintiff's amended bid. Subsequently, defendant discharged its previous engineer, had new specifications drawn, advertised anew for bids, and ultimately awarded a new contract to Booms and the sewage plant was built by him in 1955. Plaintiff did not bid on the "new" advertising for bids but chose to stand on his claimed contract and sued the city for breach thereof, claiming that the latter's acceptance of his bid on January 4, 1954, created a binding contract which could not be rescinded, thus entitling him to damages for its breach.

It should be added that there is testimony in the record that on January 16, 1954, at a special meeting of the city council, plaintiff appeared with an attorney and through the latter asked it to rescind plaintiff's contract of January 4, 1954, and relet it in the original amount of his bid because his then attorney felt that the way it was let might be illegal. No action was ever taken on this suggestion.

The opinion of the trial court below had this, in part, to say in rendering a judgment of no cause for action in favor of defendant:

"Many interesting questions were raised at trial and in the briefs filed by the parties. This court has examined all authorities cited and some not cited and is prepared to rule on all questions raised, but it is the opinion of this court that the solution of 1 question will dispose of all. Is it lawful for municipal officials to negotiate with and obtain concessions from 1 of several competitive bidders, after the sealed bids are opened and before any bid is accepted, and then to accept the amended bid without

offering the other bidders a chance to bid? If they may, the record in this case discloses a valid contract with plaintiff, for the breach of which defendant is liable. If they may not, there never was a contract and plaintiff has no cause for action. In answering this question, it must be remembered that one contracting with a municipality is bound to take notice of its limitations on its power to contract; one making a bid or entering into a contract with a municipality, acts at his peril; he is supposed to know the law (10 McQuillin, Municipal Corporations [3d ed], pages 165 and 264).

"By statute, contracts of the kind here involved must be let on sealed competitive bids, and they shall be let to the lowest responsible bidder deemed competent to do the work. (CL 1948, § 108.5 [Stat Ann 1948 Rev § 5.1908]) The purpose of this and similar statutes is to invite competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in awarding municipal contracts, to secure the best work at the lowest price practicable, and they are enacted for the benefit of property holders and taxpayers, and not for the benefit of or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. These provisions are strictly construed and will not be extended beyond their reasonable purport, 10 McQuillin, *supra,* page 266.

"Although there are a few minor distinguishing facts in *Attorney General, ex rel. Allis Chalmers Co., v. Public Lighting Commission of Detroit,* 155 Mich 207, it is the opinion of this court that the principles therein announced are applicable to the case at bar. There as here a committee of the public body authorized to accept the bids negotiated with 1 of the low bidders after the bids were open and before acceptance to obtain a better proposition. There as here the only reason for such negotiations was for the benefit of the muncipality. The Court held that

the negotiated lower bid was never properly before the lighting commission and it had no authority to act on it. The case of *Pascoe* v. *Barlum*, 247 Mich 343, 346 (65 ALR 833), properly sets forth the test to be applied to this situation. Any variation from specifications will destroy the competitive character of the bid, if such variation is substantial. To be substantial, it must affect the amount of the bid; it must give the bidder an advantage or benefit not allowed other bidders; it must be an element considered in fixing the price. This court cannot say that the negotiations here involved as to completion time and liquidated damages were substantial, but those dealing with change in specifications are substantial by the test established in the *Pascoe Case*. Any other holding would subvert the true intent of the statute even in this case, where the good faith of no one is questioned and the only apparent benefit from the negotiations would inure to the city. Who can say what reduction might have been made by the other bidders on the same changes in specifications? Plaintiff must have recognized that his amended bid was improper, or why did he attempt to resubmit his original bid to a council meeting held January 16, 1954?

"Since there was no proper bid before the council on January 4, 1954, its action in accepting plaintiff's amended bid was a nullity. Plaintiff never had a contract. Judgment of no cause for action may enter, with costs to defendant."

We adopt the foregoing as part of our opinion in this case.

Additional authorities in point are *Woolman Construction Co.* v. *Cochrane*, 235 Mich 117, 122; *Louchheim* v. *Philadelphia*, 218 Pa 100 (66 A 1121); *Scola* v. *Board of Education of the Town of Montclair*, 77 NJL 73 (71 A 299); *Detroit* v. *Robinson*, 38 Mich 108, 115; *Mackey* v. *Township of Columbus*, 71 Mich 227, 229; *Ely* v. *Grand Rapids*, 84 Mich 336, 340; 43 Am

Jur, Public Works and Contracts, § 26, pp 767, 768, § 46, p 789, § 49, pp 791, 792.

The judgment below must be affirmed, with costs.

Dethmers, C. J., and Carr, Kelly, Smith, Edwards, and Kavanagh, JJ., concurred.

Black, J., took no part in the decision of this case.