DECISION
Before this Court is a complaint filed by plaintiff M. J. Murphy Rubbish Removal ("M.J. Murphy") which alleges that defendants Misquamicut Fire District (the "District") and its elected officers violates the competitive bidding specifications they established when they awarded the District's rubbish removal contract to defendant Donald S. Hindle, d/b/a Recyclers of Rhode Island. The plaintiff seeks declaratory relief to void the allegedly defective bidding process and injunctive relief to enjoin operation of the contract awarded to Recyclers of Rhode Island as a result of that bidding process.
 Factual Background and Procedural History
In 1996, defendant Misquamicut Fire District decided not to renew the rubbish removal contract it had with plaintiff M. J. Murphy and instead to solicit bids for that work. As a result, the District advertised an invitation to bid in the Westerly Sun on March 8, 10, 13, 15 and 17, 1996. The advertisement stated in relevant part that "specifications for the removal of garbage and refuse from all residences, hotels, stores, businesses and other places within the boundaries of Misquamicut First District" could be obtained from John P. Toscano. The advertisement further provided that bids would remain open for thirty days following their unsealing and that, during that thirty days, a contract would be awarded. The contract, however, would be "subject . . . to the approval of the district taxpayers approving said contract at its annual meeting to be held on June 8, 1996." According to the terms of this advertisement, the District would accept "the proposal which is deemed most favorable to the best interest of the [District] whether or not it constitutes the lowest bid."
The bid specifications package further provided: (1) that payment under the contract would be made by the District annually in 12 equal monthly installments; (2) that from May-September, pick-up in an area designated as area one would be on Tuesdays and Saturdays, while pick-up in area two would be on Mondays and Fridays; and (3) that from September to May, area one pick-up would be on Mondays and area two pick-up would be on Tuesdays. The bid specifications also provided for a different single day pick-up for all the commercial establishments contained in areas one and two.
The bid package further required any bidder to submit three separate bids: one for a one-year contract period, one for a three-year contract period and one for a five-year contract period. The invitation to bid granted the District the discretion to reject any and all bids, accept the proposal deemed most favorable to the District (regardless of whether it was the lowest bid), and determine whether to award the contract for a one-year, three-year or five-year term, subject to voter approval. It did not provide for the extension of the contract term of any contract so awarded.
Both plaintiff M.J. Murphy and defendant Recyclers of Rhode Island submitted sealed eligible bids which complied with the bid specifications. On April 4, 1996, the bids were opened publicly and read aloud as provided for under the bidding specifications. It appears from the record that the bid of Recyclers of Rhode Island of $252,000.00 for a three-year period was the lowest bid submitted. M.J. Murphy's bid, on the other hand, was for some $315,000.00 and was next to the highest bid out of the five bids submitted. After the unsealing of the bids, and within the applicable thirty-day timeframe following the unsealing of the bids, the District awarded Recyclers of Rhode Island the rubbish removal contract.
As a result, on May 29, 1996, Donald Hindle signed the Misquamicut Fire District refuse collection contract on behalf of Recyclers of Rhode Island. John P. Toscano, Legal Counsel for the District, witnessed his signature.
On June 8, 1996, the Misquamicut Fire District held its annual meeting. At that meeting, the taxpayers voted to ratify the Recyclers of Rhode Island refuse removal contract. After the voters ratified the contract, defendants Joan Przekop, Paul Tripp, Jane Boucher, Sylvester Murano, Anthony DiPerrio and Michelle Vacca were all re-elected as officers of the District. Carol Cummings, however, who served as the District's moderator, was not re-elected until the Misquamicut Fire District reconvened its annual meeting on June 15, 1996. At the close of the District meeting of June 8, 1996, after the elections had been held and the meeting's business had been completed, Carol M. Cummings, Paul Tripp, Jane Boucher, John C. Przekop, Sylvester Murano, Jr., Michelle Vacca, and Anthony DiPerrio, as officers of the District, executed the contract. Attorney Toscano also witnessed their signatures.
The final contract provides: (1) that from May 15 to September 15, area one pick-up shall occur on Tuesdays and Fridays and from September 16 to May 14, pick-up in area one shall be on Tuesdays; (2) from May 15 to September 15, area two pick-up shall occur on Wednesdays and Saturdays and from September 16 to May 14, pick-up in area two shall be on Wednesdays; and (3) all commercial establishments shall be served from September 16 to May 14 on Mondays and from May 15 to September 15 on Mondays and Fridays. Additionally, the contract provides that payments will be made to Recyclers of Rhode Island in the amount of $3,500.00 on the 1st and the 15th of every month and that Recyclers of Rhode Island and the Misquamicut Fire District both have the right to extend the contract for an additional two-year period, subject to the approval of both Recyclers of Rhode Island and the voters of the Misquamicut Fire District.
 The Parties' Claims
Plaintiff M.J. Murphy asks this Court to set aside the Recyclers of Rhode Island contract and void the bidding procedure that underlies that contract. First, plaintiff alleges that because the actual contract contains terms which are substantially different from the bid specifications, it is void. Second, plaintiff asserts that the District executed the Recyclers of Rhode Island contract on May 29, 1996, and prior to the June 8, 1996 voter approval of the contract, and, as a result, the contract is void, in that its ratification did not comply with the bid advertisements or the contract's own terms. Third, plaintiff asserts that because officers of the District executed the contract before the June 8, 1996 meeting and that meeting's election of officers, the contract is void because it was not, in fact, ratified by the appropriate persons. The contract, argues plaintiff, contemplated execution by the newly elected board that came into existence on June 8, 1996, and not by the old board as constituted on May 29, 1996. Finally, plaintiff asserts that the District acted in bad faith and/or corruptly in awarding the contract and that its actions in making that award were so unreasonable or arbitrary as to be a "palpable abuse of discretion." In support of these claims, plaintiff argues that the May 29, 1996 contract, as executed, is substantially similar to the contract plaintiff had with the District from 1991 until the Recyclers of Rhode Island contract went into effect.
The Misquamicut Fire District objects to the setting aside of the contract and argues that the award of the contract was proper, in that it occurred only after the voters approved it at the June 8, 1996 District meeting. Additionally, while acknowledging that the contract, as executed, does contain certain changed terms, the District asserts that these changes were not substantive or substantial, but were simply matters of scheduling or procedure which were within the District's discretion. Defendant Donald Hindle, d/b/a Recyclers of Rhode Island, joins in the District's objection. He also is seeking an award for attorneys' fees incurred as a result of plaintiff's actions and claims that plaintiff's complaint is wholly unmeritorious and based solely on "sour grapes".
As for plaintiff's allegations of procedural noncompliance, the record contains no evidence to support the assertion that the District executed the contract through its elected officials either on May 29, 1996 or at any other time prior to voter approval on June 8, 1996. On the contrary, the record clearly establishes that the officers executed the contract at the June 8, 1996 meeting, after the taxpayers of the District voted to ratify the contract. More specifically, the record contains the affidavits of defendants Paul Tripp, Michelle Vacca, Jane Boucher, Sylvester Murano, Anthony DiPerrio, Carol Cummings, and Joan Przekop which all assert that they did not execute the contract on May 29, 1996 but rather at the June 8, 1996 meeting after the taxpayers had ratified the contract. Similarly, the affidavit of defendant Donald S. Hindle states that on May 29, 1996, the only signatures which appeared on the dated contract were those of he and Mr. Toscano. He states further that, at that time, Mr. Toscano informed him that the District would execute the contract upon ratification of it by the District taxpayers at the June 8, 1996 meeting. See also Letter dated June 14, 1996 from Mr. Toscano to Mr. Hindle (stating that "the voters present at the annual meeting of the Misquamicut Fire District held on Saturday June 8, 1996 approved the refuse collection contract prepared by this office between the Misquamicut Fire District and yourself doing business as Recyclers of Rhode Island. The contract was signed by the moderator and the officers of the Misquamicut Fire District after the same was approved by the voters present at the annual meeting."). It is also noteworthy that while plaintiff was present at the June 8, 1996 meeting, he did not at that time or in his deposition state that the contract already had been executed in violation of proper procedure.
Similarly, while ratification by the voters occurred prior to the re-election of the new board, the affidavits of defendants Paul Tripp, Michelle Vacca, Jane Boucher, Sylvester Murano, Anthony DiPerrio, Carol Cummings, and Joan Przekop all state that the contract was signed by them "after all business of the District's annual meeting had been concluded". Thus these affidavits, which are uncontradicted by the evidence of record, reveal that these individuals signed and executed the contract after they had been re-elected. The only member who signed the contract prior to her re-election was Carol Cummings who served as the District's moderator. Because Ms. Cummings' candidacy was contested, the election for the position of moderator was not held until the June 15, 1996 meeting. At that time, Ms. Cummings was re-elected, but she signed and executed the rubbish removal contract on June 8, 1996, prior to her re-election. As of the date of execution of the contract, Ms. Cummings still held the office of Town Moderator. As such, her execution of the contract after voter ratification, but prior to her re-election, was not beyond her authority.
Beyond these alleged procedural defects, plaintiff also alleges that the bidding process and the resulting rubbish removal contract are null and void because the terms of the contract ultimately executed pursuant to the bidding process vary significantly from the bidding specifications. More specifically, plaintiff contends that, not only do the days of pick-up vary, but also the contract's payment terms were altered from a monthly to a bi-monthly payment schedule. Finally, plaintiff argues that the contract contains a two-year renewal clause that was not mentioned in the bidding specifications.
As a general rule, an awarded contract must reflect the terms of the advertisement such that certain parties may sue upon a proposed contract if its terms differ from the advertisement inviting proposals or bids. 18 Eugene McQuillan, Municipal Corporations § 52.25 (3d ed. 1993). Indeed, a contract can be set aside where specifications are changed after the bidding has been closed. Id. § 29.64.
It is also well recognized, however, that such a remedy is only available where the changes are significant or substantial. Substantial changes include changes which effect the amount of the bid, give the bidder an advantage or benefit not allowed other bidders or after an element in fixing price. See Lasky v.City of Bad Axe, 352 Mich. 272 (1958) (contract changing welded joints to screw joints and substituting cement blocks for bricks found to be substantial changes but inclusion of a liquidation clause and changes in completion timeframes were not considered substantial). They also include changes which vary the terms of the contract so substantially as to constitute a new undertaking.See Hanna v. Board of Education, 87 A.2d 846 (Md. 1952) (change in contract to remove one building from a multi-building construction project found to be substantial).
The discretion to make non-substantial alterations to public works contracts which have been the subject of advertisement and bid has been recognized by the Rhode Island Supreme Court. InTruk Away v. Macera Bros., 643 A.2d 811 (1994), the Court stated "that those whose duty is to contract for the construction of a public improvement should[n't] be placed in a legalistic straitjacket" nor should they have their "discretion shackled once the bids are opened." Gilbane v. State Colleges Board,107 R.I. 295, 299, 267 A.2d 396, 400 (1970); see also H. V. CollinsCo. v. Tarro, ___ A.2d ___ (R.I. June 4, 1997). Thus, the Court will "presume that public officers will perform their duties properly. . . . when officials in charge of awarding public works contracts have acted fairly and honestly with reasonable exercise of sound discretion, their actions shall not be interfered with by the courts. . . . Government by injunction save in the most compelling and unusual circumstances is to be strictly avoided."Truk Away v. Macera Bros., 643 A.2d at 815 (citing Gilbane v.State Board of Colleges, 107 R.I. 295, 267 A.2d 396 (1970) (holding that where a chief executive officer of the lowest bidder for construction of a state junior college facility was unaware until after bids were opened that two sub-bids on which this bidder relied had been withdrawn, state officials charged with awarding the contract were not devoid of discretion to permit the bidder to amend its bid under circumstances shown by record)). See also Hajian v. Board of Library Trustees,685 A.2d 283 (R.I. 1996) (affirming a decision of the trial court to reject a challenge to the award of a municipal contract to a party who was not the lowest bidder).
In the instant matter, the only evidence submitted by plaintiff to support the substantial nature of the changes between the bid specifications and the contract as signed is his own statements. See Deposition of Maurice J. Murphy. In this deposition, however, plaintiff does not attempt to quantify how his bid would have been different had the scheduling changes and the extension provision of the contract been elucidated in the bid specifications. Id. at 18. Rather, he merely baldly asserts that his bid "would have been lower". Id. at 19. Yet in the year before the bidding, plaintiff charged the District his bid price of $105,000.00 dollars for what he himself admits were mirror services to the eventual contract terms between the District and Recyclers of Rhode Island. See Tr. Misquamicut Fire District Annual Meeting dated June 8, 1996 at 3 and Deposition of Maurice J. Murphy at 21. Plaintiff also makes the bald assertion that, had he known about the two-year extension, his bid would have been different because he would have "been guaranteed a cash flow for an additional two years." Tr. Deposition of Maurice J. Murphy at 14.
Plaintiff's actions in this matter, however, contradict his bald assertions. Plaintiff's bid for a one-year contract was $105,000.00. His bid for a three-year contract was three times this amount, or $315,000.00. Similarly, plaintiff's bid for a five-year contract was simply five times his one-year contract price, or $525,000.00. Tr. Misquamicut Fire District Annual Meeting dated June 8, 1966 at 3-4. Thus, while plaintiff claims a longer term contract would have allowed him to submit a lower discounted bid due the "cash-flow" guarantee, he did not calculate such a discount into his original bid. Additionally, it is significant that all the changes made in the terms of the final contract executed by defendant Hindle and the District were at the request of the District and not an attempt by defendant Hindle to get a better deal. Affidavit of Donald S. Hindle, Jr., paragraph 13.
Due to the insufficiency of the evidence presented by the plaintiff to support his claim, and after review of the changed terms of the contract as compared with the bid specifications, this Court is not satisfied, as a matter of law, that the changes made were substantial. As such, the District had the discretion to make those changes.
Finally, plaintiff has produced absolutely no evidence to substantiate his assertion that the District acted corruptly, arbitrarily or in bad faith. Similarly, the record contains no evidence of bad faith or frivolity on the part of the plaintiff in filing this action. As a result, plaintiff's claim of bad faith and the claim of defendant Hindle, d/b/a Recyclers of Rhode Island, for attorneys' fees both must be rejected.
 Conclusion
Accordingly, plaintiff's complaint is denied and dismissed, and judgment shall enter for the defendants on all counts. The claim of defendant Hindle, d/b/a Recyclers of Rhode Island, for attorneys' fees likewise is denied. Counsel shall confer and agree upon an appropriate form of order and judgment, reflective of this Court's decision, and submit it to the Court forthwith for entry.