*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN EAGAN, SAMMIE LEWIS, MICHAEL SHANE, PHILLIP SHANE, SARAH TORRES, and JAMES AND GRACE LEE BOGGS CENTER TO NURTURE COMMUNITY LEADERSHIP,

Plaintiffs-Appellants,

v

CITY OF DETROIT, MAYOR OF DETROIT, CHIEF DEPUTY FINANCE DIRECTOR OF DETROIT, CHIEF PROCUREMENT OFFICER OF DETROIT, and POLICE CHIEF OF DETROIT,

Defendants-Appellees.

FOR PUBLICATION
October 09, 2025
10:35 AM

No. 366454
Wayne Circuit Court
LC No. 22-014207-AW

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

SWARTZLE, J.

The City of Detroit uses surveillance technology to identify the location of gunshots in certain precincts. Given the inherent invasiveness of surveillance technology, the City adopted specific procedural requirements that must be met when procuring such technology. These requirements were not met here, and, accordingly, we reverse in part the trial court's grant of summary disposition to defendants.

## I. BACKGROUND

### A. THE CITY'S "CIOGS ORDINANCE"

The Detroit Police Department ("DPD") has deployed the ShotSpotter gunshot-detection technology in the City with the laudable goal of reducing violent crime. The ShotSpotter technology uses sensors to detect the sound of firearm discharge and relays the location to the police. Effective June 14, 2021, the procurement and use of "[g]unshot detection and location hardware and services" such as ShotSpotter must conform with the Community Input Over Government Surveillance Ordinance, Detroit Ordinances, § 17-5-451 *et seq*. ("CIOGS Ordinance"

-1-

or just "Ordinance"). Given its centrality to this lawsuit, a brief overview of the CIOGS Ordinance at the outset will be helpful:

Under the Ordinance, "surveillance technology" includes "[g]unshot detection and location hardware and services." Detroit Ordinances, § 17-5-451(1)(g). The Ordinance provides specific requirements for a City department seeking to procure surveillance technology. See Detroit Ordinances, § 17-5-452(a). First, the department must submit to the City Council a Surveillance Technology Specification Report ("STSR"). Detroit Ordinances, § 17-5-452(a)(1). Next, the department must publicly release the STSR, and the City Council must allow an opportunity for public comment at certain properly noticed hearings and meetings, including: (a) meetings of the City Council committee reviewing the procurement request; (b) formal sessions of the City Council during which the procurement request is considered; (c) special public hearings; and (d) any other hearings required by law. Detroit Ordinances, § 17-5-452(a)(2). The City Council must formally vote to approve the procurement. Detroit Ordinances, § 17-5-452(a)(3).

Before approving a procurement request, the City Council must determine "that the benefits of the surveillance technology outweigh its costs, that the proposal will safeguard civil rights and civil liberties, and that the use and deployment of the surveillance technology will not be based upon discriminatory or viewpoint-based factors or have a disparate impact on any community or group." Detroit Ordinances, § 17-5-452(d). Further, "City Council approval of a procurement request for a surveillance technology made pursuant to this division shall be pre-conditioned and done in reliance upon the information, obligations, and limitations set forth in the [STSR]." Detroit Ordinances, § 17-5-452(e).

Section 17-5-452(f) of the CIOGS Ordinance states, "Permission to acquire or use a new make or model of a surveillance technology does not have to be sought where its functionality and capabilities do not differ in any significant way from a previously approved version of an equivalent surveillance technology." The CIOGS Ordinance further provides, "It shall be unlawful for any City department to enter into any contract or agreement that conflicts with the provisions of this division." Detroit Ordinances, § 17-5-458(a). "It shall be unlawful for any City Department to violate any provision of this division, including, but not limited to, funding, acquiring, or using a surveillance technology that has not been approved pursuant to" the CIOGS Ordinance. Detroit Ordinances, § 17-5-459(a).

Specifically with respect to the STSR, it must "be made available to the public, at a designated page on the City's website at least 14 days prior to holding any of the hearings or meetings required under Subsection (a)(2)." Detroit Ordinances, § 17-5-452(c). The STSR must include certain information, including, in part, the description and purpose of the technology; any civil right or liberty impacts; and information about the collection and use of the acquired data. Detroit Ordinances, § 17-5-453(b).

## B. PLAINTIFFS' CLAIMS

Individual plaintiffs are residents of the City of Detroit, some of whom reside in the City's Eighth Precinct. Plaintiff James and Grace Lee Boggs Center to Nurture Community Leadership is a nonprofit organization. Defendants include the City and several of its officials involved with the procurement of the ShotSpotter technology.

The DPD first acquired ShotSpotter technology in 2020, before the CIOGS Ordinance was enacted. The DPD used the technology in limited areas within the Eighth and Ninth Precincts. In 2022, the DPD made plans to extend the time period for the ShotSpotter contract ("Extension Contract") and to implement it in an expanded area ("Expansion Contract"). The DPD's procurement requests were on the agenda for meetings of the City Council's Public Health and Safety Standing Committee in June, July, and September 2022, but an STSR had not been posted on the City's website before those meetings. The DPD engaged in meetings with city residents throughout the summer of 2022 to discuss the ShotSpotter technology. The City Council requested additional information about the technology from the police chief in June and July 2022, and Chief James White responded to those questions.

On September 12, 2022, the procurement requests were discussed at a committee meeting. The president of the City Council requested from the DPD an STSR for the ShotSpotter technology in accordance with the CIOGS Ordinance. Two days later, Chief White provided the STSR, but it was not posted on the City's website at that time. The City Council discussed both proposed contracts during a formal session on September 20, 2022, and the City Council approved the Extension Contract during another session on September 27, 2022. The STSR was finally posted on the City's website the following day. The City Council discussed the technology at a formal session on October 4, 2022, and approved the Expansion Contract on October 11, 2022.

In November 2022, plaintiffs sued defendants to invalidate the contracts, seeking declaratory relief, mandamus, and injunctive relief. Plaintiffs alleged that the DPD failed to make the STSR available on the City website 14 days before the required hearings and meetings and that the DPD's responses in the STSR were inadequate.

Defendants and plaintiffs each moved for summary disposition. Defendants moved for summary disposition under MCR 2.116(C)(4), (5), and (10), arguing that the CIOGS Ordinance was not applicable to either contract because the procurements were for the same technology that was already in place. Further, defendants argued that, even if the Ordinance applied, defendants had substantially complied with the requirements, fully cooperated with the City Council, and provided information to the public. Defendants further argued that plaintiffs lacked standing to challenge the procurements. Finally, defendants argued that plaintiffs' lawsuit was barred by mootness and laches because plaintiffs failed to sue defendants until six months after the first purported violation in June 2022, and defendants expended significant time and effort related to the procurements after that time.

The trial court held a hearing on the motions, during which plaintiffs argued that the procurements were unlawful because defendants had not complied with the CIOGS Ordinance. Defendants conceded that the STSR was not posted before the first committee meeting, but argued, instead, that this failure did not deprive the City Council of the authority to approve the procurement.

In addressing the parties' motions, the trial court first determined that, under *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010), plaintiffs had standing. As the trial court observed, "Plaintiffs have a legitimate and direct interest in holding its legislative and executive actors in our government accountable to the very rules those legislative and executive actors promulgated for and on behalf of the people." The trial court further noted, "The

City has pledged fidelity to the ordinance as it relates to ShotSpotter and this Court will hold the City accountable to that pledge . . . ."

Turning to plaintiffs' claims, the trial court noted that it was "not really accurate to suggest that the City hid the ball from the citizens in material respects," and the trial court acknowledged that there were many meetings held during which the technology was addressed. As to the Extension Contract, the trial court determined that, under the CIOGS Ordinance, permission was not required for the procurement of a new make or model of technology if the functionality and capabilities did not differ significantly from previously approved technology. The trial court determined that the question was somewhat beside the point, however, because the Expansion Contract "clearly" triggered the requirements of the Ordinance.

The trial court determined that the posting of the STSR on September 28, 2022, occurred 14 days before the City Council approved the Expansion Contract; in its view, this was sufficient to satisfy the posting requirements under the CIOGS Ordinance. Further, the trial court concluded that, although some answers in the STSR were brief or could have been more specific, the STSR was, on the whole, adequate. Accordingly, the trial court granted summary disposition in defendants' favor and denied plaintiffs' motion for summary disposition.

Plaintiffs now appeal.

## II. ANALYSIS

### A. STANDING

As noted, one of the grounds that defendants sought summary disposition against plaintiffs was on standing; on appeal, they renew this argument. Although defendants did not cross appeal, this Court can reach the argument because it was advanced as an alternative ground for relief below. *Kosmyna v Botsford Community Hosp*, 238 Mich App 694, 696; 607 NW2d 134 (1999). And because standing goes to whether a plaintiff can even bring a claim in the first place, we will address standing before reaching the merits of plaintiffs' claims. We review the question de novo. *Grady v Wambach*, 339 Mich App 325, 329; 984 NW2d 463 (2021).

In Michigan, standing is a prudential matter, and a plaintiff can establish standing to sue in several independent ways. The most straightforward way is when the plaintiff has an explicit "legal cause of action." *Lansing Sch*, 487 Mich at 372. Relatedly, if the plaintiff can meet the requirements for a declaratory action under MCR 2.605, then that plaintiff will have standing. *Id.* If there is no cause of action provided by law or MCR 2.605, then the plaintiff has to travel a more circuitous (and less certain) route—to establish standing, the plaintiff must show "a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large." *Id*.

Here, plaintiffs must travel the more circuitous route, as they point to no direct cause of action, and they seek relief beyond a declaratory judgment. The individual plaintiffs allege that they are residents of the City, and therefore the CIOGS Ordinance applies to them. Indeed, the Ordinance serves several purposes, including to ensure that City residents, like the individual plaintiffs, are informed of the DPD's use of surveillance technology, to give residents an

-4-

opportunity to learn how this technology will impact their lives, and to provide residents an opportunity to inform decisionmakers of their concerns and interests with respect to this technology.

Being subject to the Ordinance is not itself sufficient, however, to establish standing. The CIOGS Ordinance applies City-wide, and therefore the individual plaintiffs here are subject to the Ordinance in the same way as all other residents of the City. Instead, what differentiates several of the individual plaintiffs from the City's citizenry at large is not the Ordinance, but the surveillance technology itself.

First, it seems quite obvious that a resident has "a substantial interest" in whether he or she is subject to government surveillance; citations for this proposition would fill a treatise and need not be repeated here. Second, and critically for this case, the ShotSpotter surveillance technology has not been deployed uniformly across the City. Rather, as plaintiffs have alleged, and defendants have not disputed, the technology is focused on certain areas within certain precincts, including the DPD's Eighth Precinct, where several of the individual plaintiffs reside. Given the inherent nature of the technology—i.e., constant surveillance over a specified geographical area—these individual plaintiffs have been personally subject to the ShotSpotter surveillance, whereas residents in other parts of the City have not. Thus, "a substantial interest" of several of the plaintiffs has been "detrimentally affected in a manner different from the citizenry at large." *Id*.

This is sufficient to establish standing for these plaintiffs. And because at least one plaintiff has standing, that is sufficient to affirm the trial court on this point. See *Associated Builders & Contractors of Mich v State Treasurer*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369314); slip op at 8.

## B. GENUINE ISSUE OF MATERIAL FACT UNDER MCR 2.116(C)(10)

Turning to the substance of plaintiffs' claims, plaintiffs argue that the trial court erred by granting summary disposition in defendants' favor under MCR 2.116(C)(10). "We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). "Summary disposition is appropriate when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (cleaned up).

"Ordinances are treated as statutes for the purposes of interpretation and review." *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). We review de novo the interpretation and application of a statute. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). "If the language of a statute is clear, no further analysis is necessary or allowed." *Id*. "A statutory provision is ambiguous only if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Yellow Tail Ventures, Inc. v City of Berkley*, 344 Mich App 689, 700; 1 NW3d 860 (2022) (internal quotation marks omitted).

Broadly speaking, plaintiffs assert that defendants violated the CIOGS Ordinance when seeking and approving the ShotSpotter procurement in two critical ways: (1) defendants failed to post an STSR at least 14 days before all required hearings and meetings; and (2) they provided inadequate information in the STSR that was belatedly posted. As a result, the Extension and Expansion Contracts are invalid and void, according to plaintiffs.

*Application of the CIOGS Ordinance to the Contracts*. As already noted, the trial court did not address the Extension Contract, although it did consider plaintiffs' claims with respect to the Expansion Contract. In doing so, the trial court erred in part, as *both* contracts were subject to the CIOGS Ordinance, including the requirements involving the STSR.

Before the trial court and again on appeal, defendants maintain that both procurement contracts were for the same ShotSpotter technology as the original contract entered in 2020. Given this, according to defendants, the grandfather clause found in the CIOGS Ordinance at § 17-5-452(f) should apply. Recall that, under that section, the DPD does not have to seek City Council "[p]ermission to acquire or use a new make or model of a surveillance technology" when "its functionality and capabilities do not differ in any significant way from a *previously approved* version of an equivalent surveillance technology." (Emphasis added.)

To resolve whether the CIOGS Ordinance applied to the procurement process for the Expansion and Extension Contracts, this Court need not create an elaborate table listing and comparing the functions and capabilities of the various versions of the Shotspotter technology. We rely instead on something much more within our wheelhouse—statutory interpretation. Specifically, we focus on the attributive adjective phrase, "previously approved."

Notice first that the phrase is written in the passive voice, and nowhere in the sentence does the text identify or give a clue as to "who", "how", or "when" the other version was approved, except that its approval was previous to the current one being considered. Thus, read in isolation, the phrase could refer to: (1) any previous approval by City defendants, including approvals made before the CIOGS Ordinance became effective; or (2) a previous approval made in accordance with the CIOGS Ordinance. It is not uncommon for an attributive adjective phrase to create an ambiguity in an isolated sentence, so we look elsewhere in the Ordinance to see if context gives us a better understanding of whether (1) or (2) is the better reading. See *TruGreen Ltd Partnership v Dep't of Treasury*, 332 Mich App 73, 98-99; 955 NW2d 529 (2020) (Swartzle, J, dissenting), *vacated and remanded*, 507 Mich 950; 959 NW2d 177 (2021).

The term "approve" or its variations appear several times throughout the CIOGS Ordinance. When used with respect to the procurement or use of surveillance technology, the term is used consistently to mean approval by the City Council under the Ordinance or, for certain uses in exigent circumstances (not applicable here), by the Board of Police Commissioners, again under the Ordinance. See, e.g., Detroit Ordinances §§ 17-5-452(a)(3), (b), (c), (d), (e); 17-5-456(1), (2); 17-5-459(a). Moreover, in the section entitled "Prohibitions; whistle-blower protections," the Ordinance specifically makes it unlawful to procure or use any surveillance technology "that has not been approved pursuant to this division." Detroit Ordinances § 17-5-459(a). Plainly, surveillance technology that was obtained prior to enactment of the CIOGS Ordinance could not have been approved pursuant to the Ordinance. These contextual clues point to the second reading as the better one.

Although the text and context of the CIOGS Ordinance may not leave the meaning of "previously approved" free from any conceivable doubt, that is not the standard for interpreting a statute. Instead, we use the "fair reading" standard, where the text, context, and statutory history are consulted to construe a statute as a reasonable reader would do. See *Bartalsky v Osborn*, 337 Mich App 378, 386-392; 977 NW2d 574 (2021); see also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p. 33. When viewed through this lens, considering the text and context as a whole (the history of the Ordinance provides little guidance), each reading of "previously approved" is not as plausible as the other, i.e., they are not "equally susceptible to more than a single meaning." *Yellow Tail Ventures* 344 Mich App at 700 (internal quotation marks omitted). Rather, the better reading of "previously approved" is the second one: "a previous approval made in accordance with the CIOGS Ordinance."

Thus, in effect, to get the benefit of the CIOGS Ordinance's "previously approved" grandfather clause, a prior version of the technology must first be approved in accordance with the CIOGS Ordinance. In this case, prior to the Expansion and Extension Contracts, the ShotSpotter technology had not been approved pursuant to the CIOGS Ordinance, and therefore both contracts were subject to that Ordinance's explicit approval process.

*Public Posting of the STSR.* One of the primary objects of the CIOGS Ordinance is to inform the City's citizenry of surveillance technology that the DPD seeks to purchase and use. As part of its procurement process, the DPD was required to draft and make available to the public an STSR. In furtherance of this, the DPD was required to post the STSR on the City's website 14 days before any hearing or meeting involving the requested procurement. Detroit Ordinances, § 17-5-452(c).

Defendants do not claim that they posted the STSR earlier than September 28, 2022. Prior to this date, there were several key committee meetings and formal sessions of the City Council, during which requests to extend and expand the ShotSpotter technology were discussed— including the session during which the City Council approved the Extension Contract. The City Council also continued to discuss the Expansion Contract on October 4, 2022, fewer than 14 days after the posting (although approval of the Expansion Contract was ultimately delayed a week). Thus, the record confirms that defendants repeatedly violated the requirement under § 17-5-452(c) that the STSR "be made available on the City's website at least 14 days *prior* to holding *any* of the hearings or meetings" identified elsewhere in that Ordinance. (Emphasis added.) The trial court erred in concluding otherwise when it granted summary disposition in favor of defendants on this claim.

*Substance of the STSR.* In addition to its untimeliness, plaintiffs also argue that the STSR was substantively inadequate. Plaintiffs do not, however, cite any standard in the CIOGS Ordinance for evaluating the sufficiency of the information that DPD provided in the STSR. The trial court reviewed the STSR and acknowledged that some responses were brief. With that said, as the trial court correctly observed, the DPD provided substantive information on each of the identified subjects, Detroit Ordinances, § 17-5-453, and plaintiffs fail to demonstrate that any specific part or response of the STSR was out of compliance with the CIOGS Ordinance. Based on our review of the STSR, although it was untimely posted, it otherwise met the requirements of the CIOGS Ordinance. Thus, the trial court's grant of summary disposition on this claim is affirmed.

*Relief for Violating the CIOGS Ordinance*. Despite any shortcomings with the timing of its posting of the STSR, defendants maintain that the City Council was nonetheless authorized to approve the procurement, and therefore the Expansion Contract and Extension Contract are not void or voidable. A close reading of the CIOGS Ordinance is needed to determine to what relief, if any, plaintiffs might be entitled.

The CIOGS Ordinance makes it unlawful for a City department, like the DPD, to do either of two acts relevant here: (1) "to enter into any contract or agreement that conflicts with the provisions" of the Ordinance; or (2) "to violate any provision" of the Ordinance. Detroit Ordinances §§ 17-5-458(a); 17-5-459(a). With respect to (1), plaintiffs have not shown that there is any provision in either the Extension Contract or the Expansion Contract that explicitly conflicts with any provision of the CIOGS Ordinance. Plaintiffs did not provide either contract in full. The portion of the Expansion Contract provided to this Court does not, on its face, violate the Ordinance. Accordingly, plaintiffs have not demonstrated that either contract violates § 17-5-458(a).

With respect to (2), as already explained, the DPD did not post the STSR to the City's website in a timely manner, and by procuring the technology without satisfying the posting requirement of § 17-5-452(c), the DPD violated § 17-5-452(a) and thereby § 17-5-459(a). That being said, it is not at all clear that there is any remedy for this violation of the Ordinance.

In demanding strict compliance with the CIOGS Ordinance, plaintiffs rely on several judicial decisions where such compliance was required. As one example, in *Sault Ste Marie City Comm v Sault Ste Marie City Attorney*, 313 Mich 644, 664-665; 21 NW2d 906 (1946), our Supreme Court concluded that a city charter required that the contested contract could only be awarded upon competitive bidding. The Court declined to pass on whether approval of the contract was a ministerial act appropriate for a writ of mandamus. *Id.* at 665. Plaintiffs also cite *Lasky v City of Bad Axe*, 352 Mich 272, 273; 89 NW2d 520 (1958), a case in which the defendant city received bids for a construction project. The plaintiff submitted a bid, but, after meeting with city officials to negotiate alterations about the job, the plaintiff lowered his bid. *Id*. at 273-274. The city council accepted the plaintiff's amended bid, and the other bidders were not given an opportunity to rebid on the revised project. *Id*. at 274-275. The city council later rescinded the acceptance of the plaintiff's amended bid, and the plaintiff sued for breach of the contract. *Id*. at 275. The trial court explained that statutory provisions requiring "sealed competitive bids" were to be "strictly construed." *Id*. at 276. Accordingly, the trial court held that the plaintiff's contract was invalid because the city had no authority to accept the amended bid. *Id*. at 277. Our Supreme Court affirmed the trial court's decision. *Id*.

We are hesitant, however, to void the contracts on appeal based on principles of law divorced from their context. On the one hand, as explained, the contracts themselves do not appear to conflict with the CIOGS Ordinance. Just as importantly, the record shows that the DPD engaged in meaningful public outreach prior to the City Council's approval of the contracts. Both of these weigh against concluding that the contracts are void or voidable.

On the other hand, the CIOGS Ordinance sets forth specific procedural requirements that must be met before such contracts can be entered. The requirements are clear and detailed. With surveillance and similar technology ever encroaching into every recess of modern life, procedural

safeguards cannot be ignored or downplayed by government actors as mere technicalities. To ensure that technology serves the people, and not the other way around, strict compliance with procedural safeguards like the CIOGS Ordinance may well be needed. And, unfortunately, such compliance was lacking here.

Ultimately, we conclude that the form of relief to which plaintiffs are entitled, if any, is a question best left to the trial court in the first instance. As explained below, defendants have other affirmative defenses, and thus the difficult question of relief might be avoided altogether.

## C. DEFENDANTS' REMAINING ARGUMENTS

In addition to standing, defendants also argue in the alternative that plaintiffs' claims are barred by mootness and laches. They argue that plaintiffs were aware that the STSR had not been posted on the City's website 14 days in advance of the June 2022 committee meeting, but they failed to act until the procurements were completed and, now, the contracts have been substantially implemented. In their view, this delay is fatal to plaintiffs' claims.

On mootness, "[c]ourts typically refrain from deciding issues that are moot when it is *impossible* for the court to craft an order with any practical effect on the issue." *Davis v Secretary of State*, 346 Mich App 445, 460; 12 NW3d 653 (2023) (cleaned up, emphasis added). Although defendants presented evidence that payment and expansion had already been implemented, they have not definitively shown that plaintiffs can obtain no meaningful relief. Because any form of relief to which plaintiffs might be entitled has not been the focus of the trial court proceedings or this appeal, we will not address mootness here. The same goes for laches, which requires a showing of "an *unexcused* or *unexplained delay* in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 29; 896 NW2d 39 (2016) (cleaned up, emphasis added). Both defenses are better handled by the trial court in the first instance.

## III. CONCLUSION

Accordingly, the trial court erred in part when it granted summary disposition in defendants' favor on plaintiffs' claim that defendants failed to release the STSR in accordance with the CIOGS Ordinance requirements. Instead, summary disposition in this regard was warranted in favor of plaintiffs when the facts were undisputed that defendants failed to comply with their requirements to post the STSR before all the relevant hearings and meetings. The trial court did not address plaintiffs' specific requests for relief, however, because it determined that summary disposition was proper in defendants' favor. Nor did the trial court address defendants' affirmative defenses of mootness and laches. These and any other pertinent matters are better left to the trial court to address on remand.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett